```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION

RICHARD L. WHYTUS,              §
                                §
              Plaintiff,        §
                                § Civil Action No. 3:07-CV-0182-D
VS.                             §
                                §
MICHAEL J. ASTRUE,              §
COMMISSIONER OF SOCIAL          §
SECURITY,                       §
                                §
              Defendant.        §
```

MEMORANDUM OPINION

Plaintiff Richard Whytus ("Whytus") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Act. For the reasons that follow, the court REVERSES the decision of the Commissioner and REMANDS the case for further proceedings consistent with this memorandum opinion.

I

Whytus filed an application for disability insurance benefits on November 23, 2004. He alleges that he became disabled on September 29, 2004 and has not worked since due to degenerative arthritis in his right hip and ankle as well as diabetes mellitus. He was born in 1962, has an eighth grade education, and has over 20 years of relevant work experience as a machine operator.

The Social Security Administration ("SSA") denied Whytus'

application twice. On initial consideration, it determined that he was capable of performing his past relevant work. On reconsideration, it found that although he could not perform his past work, he was still able to perform less demanding work. Whytus requested a hearing before an administrative law judge ("ALJ"), which he received on May 31, 2006. Whytus testified at the hearing, where he was represented by a non-attorney. A medical expert and a vocational expert ("VE") also presented testimony. At the conclusion of the hearing, the ALJ granted Whytus' request to hold the record open for 30 days so that he could obtain psychological testing to investigate the possibility of a mental impairment. George R. Mount, Ph.D. ("Dr. Mount"), a clinical psychologist, examined Whytus and performed a psychological evaluation that was timely submitted to the ALJ.

On June 30, 2006 the ALJ issued a decision finding that, although Whytus could no longer perform the duties of his former job, other relevant work existed in the national economy that Whytus could perform. Specifically, he found that Whytus' physical impairments were severe, but that they did not meet the criteria for one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007). The ALJ determined that Whytus retained the residual functional capacity ("RFC") for a restricted range of unskilled light work, because he was able to sit for six hours, stand or walk two hours per eight-hour work day, lift or carry

twenty pounds occasionally and ten pounds frequently, and occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 18. He found that Whytus was not able to perform the full range of light work due to his inability to stand and walk more than two hours out of eight; however, he noted that the VE had testified that significant numbers of unskilled light jobs exist in the national economy that Whytus could perform despite these physical limitations. R. 19.

The VE also testified that if psychologically-based impairments were added to these physical limitations, such that the individual could not complete an eight-hour workday without interruptions, then that individual would not be able to do even sedentary work. The ALJ ultimately determined that "[b]ased on the testimony of the [VE], I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 19.

Whytus originally argued that the VE's testimony was insufficient to show that significant numbers of alternative jobs existed in the national economy that he could perform, because the hypothetical on which the ALJ relied did not accurately include all of Whytus' limitations. In response, the Commissioner asserted that he had met his burden of showing that jobs existed that Whytus

could perform based solely on the Medical-Vocational Guidelines of Appendix 2, Subpart P, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2003) (the "Grids"), and that it was unnecessary to rely on the VE's testimony.  Subsequently, Whytus contended that the ALJ should not have used the Grids exclusively when determining whether there was work in the national economy that Whytus could perform.  Whytus avers that he has significant nonexertional impairments that preclude the application of the Grids and require the use of a VE to establish that jobs exist that he can perform.  Whytus also maintains that the ALJ did not properly consider all of his impairments, and that the ALJ's decision was therefore based on the application of the wrong legal standard, resulting in reversible error.

II

The court's review of the Commissioner's decision is limited to determining (1) whether the decision is supported by substantial evidence and (2) whether the proper legal standards were applied to evaluate the evidence.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).  "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)

(citations omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. See *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. See *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

If the court determines that the Commissioner applied improper

legal standards to evaluate the evidence, however, the court need not defer to his judgment. Rather, failure to apply the correct legal standard is a question of law that the court reviews *de novo*. *See, e.g.*, *AT&T Corp. v. Pub. Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004) (citing *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000)) ("All questions of law are reviewed *de novo*.")

To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520 (2003); *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74. The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914

F.2d 614, 618 (5th Cir. 1990) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the record must show that the limitations imposed by claimant's conditions prevent him from engaging in any substantial gainful activity. See *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to determine if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy his duty, the decision is not substantially justified. *Id*. Reversal of the ALJ's

decision is appropriate, however, only if the applicant shows that he was prejudiced. *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. See *Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Whytus contends that the ALJ erred in finding that he had no severe mental impairment, and therefore in relying on the Grids rather than on the testimony of the VE, to find that there were a significant number of relevant jobs in the national economy that Whytus could perform. Specifically, Whytus asserts that the ALJ committed reversible error by failing to apply the required "special technique" outlined in 20 C.F.R. § 404.1520a (2006) for assessing the severity of claims of mental impairment.

A

The Commissioner can rely exclusively on the Grids to satisfy his burden of showing that relevant work exists in the national economy if the claimant's "impairments are solely exertional or the nonexertional impairments do not sufficiently affect [his] residual functional capacity." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)). The Commissioner must rely on the testimony of a VE to establish the existence of relevant work, however, if the claimant suffers from either nonexertional impairments or a combination of both

exertional and nonexertional impairments.  *Id.* (citing *Fraga*, 810 F.2d at 1304).  According to the SSA regulations,

> [l]imitations are classified as exertional if they affect your ability to meet the strength demands of jobs. . . .  Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional.

20 C.F.R. § 404.1569a(a) (2003).  The regulations further outline some specific examples of nonexertional limitations or restrictions, including "difficulty functioning because you are nervous, anxious, or depressed."  20 C.F.R. § 404.1569a(c)(1)(i).

Here, Dr. Mount's assessment of Whytus, as recognized by the ALJ, indicated "schizoaffective disorder, depressed type, anxious and suggestive of a personality disorder."  R. 15.  This suggests the existence of a nonexertional impairment, as defined by § 1569a.  Therefore, to justify relying exclusively on the Grids, the ALJ must have determined that Whytus' "nonexertional impairments do not sufficiently affect [his] residual functional capacity."  *Newton*, 209 F.3d at 458 (citing *Fraga*, 810 F.2d at 1304).

The SSA regulations set out a detailed "special technique" for assessing the severity of a claim for mental disability.  20 C.F.R. § 404.1520a.  The "special technique" is "a corollary procedure for determining the merits of mental disability claims."  *Boyd*, 239 F.3d at 705.  The stated purpose of this standard technique is to assist the Commissioner in (1) identifying the need for additional

evidence to determine impairment severity; (2) considering and evaluating the functional consequences of the mental disorder on the claimant's ability to work; and (3) organizing and presenting the findings in a clear, concise, and consistent manner. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ is required first to evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If a medically determinable mental impairment is found, the ALJ must then rate the severity of the impairment by assessing the degree of limitation it causes in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(b)(2), (c)(3).

To ensure that the ALJ properly follows this "special technique," he is required to document its application by incorporating the "pertinent findings and conclusions" into his decision. 20 C.F.R. § 404.1520a(e); *Dykstra v. Barnhart*, 94 Fed. Appx. 449, 450 (9th Cir. 2004). "The decision must include a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2). Furthermore, failure to include these findings in the decision "requires reversal if the plaintiff had a 'colorable claim of a mental impairment,'" *Dykstra*, 94 Fed. Appx. at 450 (citing *Gutierrez v.*

*Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000)), where a colorable claim is "one which is not 'wholly insubstantial, immaterial, or frivolous,'" *id.* (citing *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 981 (9th Cir. 2002)).

B

In this case, the ALJ specifically stated that the mental disorders Dr. Mount identified "are considered medically determinable impairments."[1] R. 16. Thus the first step of the "special technique" is satisfied, and findings concerning the four "broad functional areas" are therefore required. *See* 20 C.F.R. § 404.1520a(b). This also supports the conclusion that Whytus' claim was not "wholly insubstantial, immaterial, or frivolous." *See Dykstra*, 94 Fed. Appx. at 450. Whytus therefore had a "colorable claim of a mental impairment," and the ALJ's failure to include findings in his decision pertaining to the four functional areas would constitute reversible error. *See id.*

It is undisputed that the ALJ's decision does not include

---

[1] It is not clear from this statement whether the ALJ meant to attribute these "medically determinable impairments" to Whytus, or simply intended to recognize that the impairments that Dr. Mount identified would fall within the category of "medically determinable impairments" if they were found to exist. *See* R. 16. The ALJ appeared to implicitly concede, however, that Whytus has *some* mental impairment by finding "that the claimant's mental impairment is both non-severe and that it does not meet the Act's duration requirements." *Id.*

specific findings related to the four functional areas.[2]  *See* 20 C.F.R. § 404.1520a(c)(3).  The Commissioner concedes that the ALJ did not adhere to these requirements, but he contends that this merely constitutes harmless procedural error because "the record as a whole supports the ALJ's finding that Whytus did not have a severe mental impairment."  D. Br. 7.  The court disagrees.  The documentation requirements of § 1520a "are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements."  *Selassie v. Barnhart*, 203 Fed. Appx. 174, 176 (9th Cir. 2006).

Because the ALJ did not make findings and conclusions in accordance with § 1520a, the court cannot determine whether substantial evidence supports his decision that Whytus' mental impairment is non-severe.  Rather, by failing to consider and make findings on his conclusions regarding the "special technique," the ALJ did not apply the proper legal standard to evaluate the evidence. *See* 20 C.F.R. § 404.1520a.   The ALJ's failure to adhere to the SSA regulations constitutes reversible error in this case. *See id.; see also Dykstra*, 94 Fed. Appx. at 450; *Selassie*, 203 Fed. Appx. at 176.

---

[2]The ALJ did note that Whytus "testified to engaging in activities of daily living with respect to chores for spending money that would be incompatible with a finding of disabled under the Act and its regulations."  R. 17.  But this was in reference to Whytus' claims for physical impairment, and is therefore inapplicable in the context of evaluating a mental impairment under § 1520a.

C

Accordingly, the court holds that the Commissioner's decision must be reversed and the matter remanded so that the ALJ can adequately evaluate and document Whytus' mental impairments. If, after performing the required analysis, the ALJ still finds that Whytus' mental impairments are non-severe, he may then rely on the Grids to determine whether Whytus is disabled. If, however, the § 1520a analysis leads him to conclude that Whytus' mental impairment is severe, then new VE testimony may be necessary, because the prior testimony could constitute an incomplete representation of Whytus' impairments.

IV

The Commissioner argues that the ALJ properly declined to give weight to Dr. Mount's opinion, noting "the paucity of evidence" supporting the conclusion that Whytus had a severe mental impairment. D. Br. 8. He maintains that the ALJ was therefore justified in relying on the Grids, without performing the § 1520a analysis, to find that Whytus could perform relevant work in the national economy, and that VE testimony was unnecessary.

A

The ALJ is required by 20 C.F.R. § 404.1527(d) (2006) to consider several factors in assessing the weight that should be given to medical opinions. A physician's opinions are not conclusive, however, and the ALJ may reject the opinions when the

evidence supports a contrary determination. *Newton*, 209 F.3d at 455 (citing *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999)).

B

The Commissioner addresses the § 404.1527(d) factors in his brief, maintaining that the record as a whole supports the conclusion that Whytus does not have a severe mental impairment. Whytus contends that this analysis is an impermissible *post hoc* rationalization. The court disagrees. "There is no rule that a party in these circumstances is prohibited from discussing evidence in the record unless that evidence is specifically cited or relied upon by the ALJ in his decision." *Muscarella v. Barnhart*, 117 Fed. Appx. 333, 334 (5th Cir. 2004) (per curiam). But while the Commissioner is permitted to discuss *evidence* not specifically cited by the ALJ to support the ALJ's reasoning, he still must limit his argument to those *reasons* set forth by the ALJ. *See Newton*, 209 F.3d at 455 ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.").

A careful review of the record reflects that there is evidence that would enable the ALJ to reject Dr. Mount's opinion.[3] The record does not confirm, however, that the ALJ rejected Dr. Mount's opinion based on his consideration of the factors required by

---

[3]For example, it is well documented in Whytus' physical and mental examinations that he has a tendency to magnify, exaggerate, and complain excessively regarding his alleged ailments.

§ 404.1527(d). The court acknowledges that, in the interest of administrative efficiency, ALJs are not required to give detailed reasons for discounting the opinions of non-treating medical sources.[4] *Cf. Newton*, 209 F.3d at 453, 456 (holding that ALJ was required to consider and discuss each of the § 404.1527(d) factors before declining to give weight to medical opinions of claimant's *treating* physician). The record does not support the Commissioner's conclusion, however, that the ALJ entirely rejected Dr. Mount's opinion. Rather, the ALJ found that Whytus had a mental impairment, but that it was non-severe and failed to meet the Act's durational requirements, because (1) Whytus had not asserted disability due to mental impairment in his original claim; (2) his mental impairment was a newly-diagnosed condition that appeared treatable and was unlikely to last the minimum required 12 months; and (3) he had not been under the treatment of a mental health professional. R. 16.

The ALJ did state broadly that he had "considered opinion evidence in accordance with the requirements of 20 C.F.R. [§] 404.1527." *Id.* Although the ALJ did not specifically discuss the weight he had attributed to Dr. Mount's opinion, he at least implicitly discounted its importance by finding that Whytus' mental

---

[4]Dr. Mount is considered a non-treating source in this case because, although he examined Whytus, he did not have "an ongoing treatment relationship" with him. *See* 20 C.F.R. § 404.1502 (2006). Rather, their relationship was based "solely on [Whytus'] need to obtain a report in support of [his] claim for disability." *See id.*

impairment was non-severe. But he also specifically found that the mental disorders Dr. Mount identified were "considered medically determinable impairments." *Id.* The fact that the ALJ discussed reasons other than lack of credibility for concluding that Whytus' mental impairment was non-severe suggests that even if he did perform the proper § 1527(d) analysis, this was not the basis for his finding that Whytus' mental impairment was non-severe.

Therefore, the Commissioner's *post hoc* justification for the ALJ's conclusion is a misplaced application of the wrong legal standard. Although Dr. Mount's opinion may have been dubious in light of the record as a whole, the ALJ did not explain that he was rejecting it, and he instead relied on other grounds to conclude that Whytus' mental impairment was non-severe. As discussed above, the ALJ's decision indicates that he found, based on Dr. Mount's opinion, that Whytus had a mental impairment; there is no indication that the ALJ totally discredited his opinion. Because the ALJ at least found that Whytus had a "medically determinable impairment," he was not free to discredit that impairment as non-severe without performing the proper § 1520a analysis. *See* 20 C.F.R. § 404.1520a(b).

The question, then, is not whether substantial evidence supports the ALJ's finding that Whytus did not have a severe mental impairment, but whether the ALJ undertook the proper analysis in reaching that conclusion. The court holds that he did not, and

therefore rejects the Commissioner's argument in support of affirmance.

V

Even if the ALJ had applied all the proper legal standards, the record does not support the reasoning the ALJ offered for his conclusions regarding Whytus' mental impairment. For example, the ALJ cites as one justification for discounting the claim for mental impairment: the fact that Whytus "did not urge disability due to a mental impairment when his claim was first processed. Rather, this matter has progressed to hearing only on his complaints of physical limitations." The ALJ must consider, however, all of Whytus' impairments and their combined effect on his ability to work, even if he did not assert them in his original claim. *Cf. Selassie*, 203 Fed. Appx. at 176 n.1 ("[T]he Appeals Council is required to consider 'new and material evidence' that 'relates to the period on or before the date of the administrative law judge hearing decision.'") (citing 20 C.F.R. § 404.970(b) (1987)). Furthermore, Whytus originally filed his claim for disability in November 2004, and Dr. Mount's psychological evaluation was not performed until June 2006. A severe mental impairment certainly could have developed or have been first diagnosed during this time, and could still satisfy the durational requirement. Finally, the ALJ specifically decided to keep the record open for 30 days following the administrative hearing to allow for psychological testing to be

conducted.  He must have concluded that there was at least a possibility that Whytus was suffering from mental impairments, and therefore granted him time to investigate this possibility, stating "we can do it because you mentioned anxieties."  R. 305.

*    *    *

The court concludes that the ALJ erred in failing to follow the required procedure for assessing the severity of Whytus' mental impairments.  Consequently, his reliance on the Grids to determine that a significant number of relevant jobs existed in the national economy that Whytus could perform constitutes legal error and violates Whytus' rights.  The court therefore need not address the question whether Whytus' physical impairments alone were properly found to be non-severe.

*    *    *

The Commissioner's decision is REVERSED, and this matter is REMANDED for further proceedings consistent with this memorandum opinion.[5]

August 13, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[5] Whytus requests that the court impose a 30-day deadline for the Commissioner to conduct another hearing.  P. Br. 1.  The court denies this request.